**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Amanda Lake, Respondent,

v.

Jonathan Lake, Appellant.

Appellate Case No. 2012-211945

_____

Appeal From York County
Robert E. Guess, Family Court Judge

_____

Unpublished Opinion No. 2014-UP-099
Heard January 6, 2014 – Filed March 5, 2014

_____

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**

_____

Jewitte Dooley, of Davis Frawley Anderson McCauley Ayer Fisher & Smith, LLC, and Erica Parker Ellis, of The Dooley Law Firm, PA, both of Lexington, for Appellant.

R. Chadwick Smith, of Rock Hill, for Respondent.

_____

**PER CURIAM:** Jonathan Lake (Husband) appeals from the family court's orders granting the parties a divorce and ruling upon his post-trial motion, arguing the family court erred in (1) awarding Amanda Lake (Wife) $350 per month in permanent periodic alimony, (2) awarding Wife $5,000 in attorneys' fees, (3) apportioning the marital property without sufficient evidence in the record to value the marital assets, and (4) eliminating Husband's Tuesday overnight visitation. We affirm in part and reverse in part.

## FACTS

Husband and Wife married on August 24, 2002, and have two minor children. The parties separated on April 21, 2010, and a month later, Wife initiated an action for separate support, maintenance, and other relief, although she did not plead for spousal support. The family court issued a temporary order, establishing a standard visitation schedule, modified only by a provision giving Husband one overnight visit every week. The family court ordered Husband to pay Wife temporary child support of $1,150 per month.

Thereafter, Wife filed an amended complaint seeking a divorce on the ground of adultery or, alternatively, one year's separation. In her amended complaint, Wife sought an award of alimony. On January 26, 2012, the family court entered its final order (the Decree). The family court found both parents were fit and, in accordance with the parties' agreement, awarded the parties joint custody of the children, with Wife as the primary custodial parent. The Decree ordered Husband's visitation would include every other weekend, beginning on Friday after school and ending on Wednesday morning. The Decree provided, "The alternating week night visitation . . . shall be eliminated in consideration of the additional days added to his weekend visits." The family court required Husband to pay Wife $350 per month in permanent periodic alimony. The family court ruled each party would receive fifty percent of the value of the marital property, as reflected in a schedule attached to the Decree. Finally, the family court required Husband to pay $5,000 toward Wife's attorneys' fees.

Subsequently, Husband moved the family court to alter or amend the Decree. The family court modified portions of the Decree that are not the subject of this appeal, and denied Wife's request for attorneys' fees for defending against the motion to alter or amend. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, [appellate courts] review[] factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (footnote omitted). The burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings. *Id.* "Stated differently, de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court." *Id.* at 388-89, 709 S.E.2d at 654 (italics omitted). Appellate courts reviewing the equitable division of marital property do not re-weigh the apportionment factors but review the overall apportionment for fairness. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988) (citing *Morris v. Morris*, 295 S.C. 37, 39-40, 367 S.E.2d 24, 25 (1988)).

## LAW/ANALYSIS

### I.     Alimony

Husband asserts the family court erred in awarding Wife permanent periodic alimony of $350 per month. We agree.

The family court has the authority to award alimony "in such amounts and for such term as the court considers appropriate as from the circumstances of the parties and the nature of case may be just." S.C. Code Ann. § 20-3-130(A) (Supp. 2014). The purpose of alimony is to place the supported spouse, as close as is practical, in the same position of support as during the marriage. *Johnson*, 296 S.C. at 300, 372 S.E.2d at 113. However, "[a]limony should not dissuade a spouse, to the extent possible, from becoming self-supporting." *Rimer v. Rimer*, 361 S.C. 521, 525, 605 S.E.2d 572, 574 (Ct. App. 2004). In making an award of alimony, the family court "must consider and give weight in such proportion as it finds appropriate to all of the following factors": (1) duration of the marriage and the ages of the parties at the time of the marriage and separation; (2) physical and emotional condition of each spouse; (3) educational background of each spouse and the need for additional training or education; (4) employment history and earning potential of each spouse; (5) standard of living established during the marriage; (6) current and

reasonably anticipated earnings of both spouses; (7) current and reasonably anticipated expenses and needs of both spouses; (8) marital and nonmarital properties of the parties; (9) custody of the children; (10) marital misconduct or fault of either or both parties; (11) tax consequences of the award; (12) any support obligation from a prior marriage or for any other reason of either party; and (13) other factors the court considers relevant. S.C. Code Ann. § 20-3-130(C) (Supp. 2014). No one of these statutory factors is dispositive. *Pirri v. Pirri*, 369 S.C. 258, 267, 631 S.E.2d 279, 284 (Ct. App. 2006).

In awarding Wife alimony, the family court stated it considered the relevant statutory factors. It made extensive findings concerning four factors: (1) the parties' emotional conditions; (2) the parties' reasonably anticipated expenses; (3) the standard of living established during the marriage; and (4) fault. Of these, the family court specified the standard of living carried "great weight" and fault carried "considerable weight" in its decision. Despite the family court's findings, we find its award of alimony to Wife was not warranted.

As to the standard of living established during the marriage and the parties' current and reasonably anticipated expenses, the record does not support the family court's conclusion that Wife would "be hard pressed to continue or maintain that standard of living" due to her assumption of marital debts. A review of the evidence reflects Wife has sufficient income, including child support, to adequately take care of her needs and maintain the standard of living established during the marriage. The parties' financial conditions indicate that without alimony, the parties' net monthly surpluses above expenses are within $35 of one another:

|  | Wife | Husband |
|---|---|---|
| Monthly earnings | $ 9,998 | $ 9,923 |
| Child Support | 1,004 | - 1,004 |
| Payroll deductions | - 4,155 | - 3,074 |
| Expenses[1] | - 5,826 | - 4,858 |

---

[1] In addition to other debts, the parties owed $42,133 on a home equity line of credit and $6,298 on another line of credit attached to their checking account (the Wachovia Line). The family court apportioned the marital home, along with the mortgage and the home equity line of credit, to Wife and the Wachovia Line to Husband. Both parties claimed the Wachovia Line on their financial declarations. Because the family court apportioned it to Husband, we have reduced Wife's

| | | |
|---|---|---|
| Net monthly surplus | $ 1,021 | $ 987 |

Factoring in the family court's alimony award of $350 per month, Wife would realize $1,371 per month and Husband, $637. Additionally, we note this picture would change significantly after Wife paid off her automobile loan. Without the $580 automobile loan payment every month[2] and without alimony, Wife would realize $1,601 per month and Husband, $987. Without the automobile loan payment, but with $350 in alimony, Wife would realize $1,951 per month and Husband, $637. Moreover, we find troubling the family court's finding that Husband may soon rely on financial contributions from his current girlfriend. Although Husband and his girlfriend affirmed their intent to marry and Husband admitted his girlfriend was employed as a teacher, no evidence indicates: when the marriage might take place; whether his girlfriend would continue working; or what obligations she would bring into the marriage. Any finding that Husband's girlfriend's income would soon supplement Husband's is speculative.

Next, the record does not support the family court's finding Husband bore the fault for the breakup of the marriage. *See* § 20-3-130(C)(10) (permitting the family court to consider "marital misconduct or fault of either or both parties, . . . if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage," but only when the misconduct occurred before "the earliest of (a) the formal signing of a written property or marital settlement agreement or (b) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties"). While the evidence suggests Husband's misconduct may have minimally affected the economic circumstances of the parties, the evidence does not suggest it contributed to the breakup of the marriage. Although Husband pursued a new romantic interest, the new relationship did not begin until after Husband and Wife separated. Additionally, both parties testified regarding their marital problems, which included arguments,

---

$5,876 in monthly expenses by $100, the amount she claimed to be paying toward that debt. We have added an additional $50 per month to Wife's expenses for the Belk and Ann Taylor Loft credit cards, which were omitted from her financial declaration.

[2] In fact, the record reflects Wife's car loan should have been paid off by August of 2012.

Wife's jealousy, and Wife's distrust, all contributing to a toxic environment for the children.

Likewise, the remaining factors do not support the alimony award to Wife. The family court correctly found both parties were highly educated and had already received the maximum amount of training needed to reach their income potential. It also correctly found the parties' "substantial incomes . . . would be anticipated to continue or increase." According to the family court, the parties' "incomes are limited only by the hours available to them to work and their willingness to work during those available hours." Wife's earnings decreased only because she reduced her working hours from forty to thirty-three per week. Husband testified he worked fifty to sixty hours each week, which was difficult, and "would have to work even harder" to pay alimony. Additionally, neither party indicated anticipating a reduction in salary, a loss of job, or any other event that would decrease their ability to earn. Furthermore, the family court erred in finding only Husband had the ability to increase his income through working overtime. The family court's finding Wife did not have the ability to increase her income is not supported by the testimony. Wife testified overtime hours were unavailable at her store because it was fully staffed. However, she conceded she could "possibl[y]" work additional hours at another CVS store in her area to earn more income.

Accordingly, we hold the family court erred in finding (1) Husband could rely upon his girlfriend's income in the future, (2) Husband bore the fault for the breakup of the marriage, and (3) only Husband had the ability to increase his earnings by working overtime. The family court's alimony award is reversed.

## II.    Attorneys' Fees

Husband asserts the family court erred in awarding Wife attorneys' fees of $5,000, despite evidence in the record she had the ability to pay and the failure of her counsel to present evidence of the hours billed for his services. We agree.

"The decision to award attorney's fees is within the family court's sound discretion, and although appellate review of such an award is de novo, the appellant still has the burden of showing error in the family court's findings of fact." *Lewis v. Lewis,* 400 S.C. 354, 372, 734 S.E.2d 322, 331 (Ct. App. 2012).

In an action for separate maintenance or divorce, the family court may, "after considering the financial resources and marital fault of both parties, . . . order one party to pay a reasonable amount to the other for attorney fees." S.C. Code Ann. § 20-3-130(H) (Supp. 2014). A family court deciding whether to award attorneys' fees should determine: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). A court awarding attorneys' fees must address six factors in determining the reasonableness of the award: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

We find Wife is capable of paying her own attorneys' fees. Her gross monthly income, including child support, is substantial. Additionally, she exercised options to purchase and sell stock in anticipation of her legal fees, for which she received approximately $11,150 after taxes and fees. Furthermore, as to the beneficial results obtained, although the family court granted Wife a divorce on the ground of Husband's adultery and alimony of $350 per month, we have reversed the alimony award.

Moreover, the factual findings concerning the reasonableness of this award were minimal at best, and the record does not support the award in all respects. According to the *Glasscock* court, the contingency of compensation, which does not apply to family court cases, and the beneficial results obtained apply to a party's entitlement to an award. *Id.* Beneficial results is the second *E.D.M.* factor. 307 S.C. at 476, 415 S.E.2d at 816. Consequently, we need address only the *Glasscock* factors considering the reasonableness of the hourly rate and the number of hours billed.

The nature, extent, and difficulty of the case and the time necessarily devoted to the case relate to the number of hours charged. *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315. The family court stated only that it had "considered" each of these factors. However, "the family court's failure to include specific findings as to each *Glasscock* factor does not require reversal of an attorney's fee award, as long evidence in the record supports each factor." *Marchant v. Marchant*, 390 S.C. 1,

13, 699 S.E.2d 708, 715 (Ct. App. 2010) (citing *Townsend v. Townsend*, 323 S.C. 309, 318, 474 S.E.2d 424, 430 (1996)). The record reveals Wife's attorney drafted initial and amended pleadings and proposed orders in an action for separate maintenance that later became a divorce action, represented his client's interests in negotiations with opposing counsel, conducted discovery, and appeared for and participated in a mediation and merits hearings. Wife's attorney's affidavit indicates he billed Wife $7,300 at a rate of $200 per hour. However, Wife's attorney did not provide evidence of the time he devoted to the case.

The professional standing of counsel and customary legal fees for similar services pertain to the reasonableness of the hourly rate. *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315. With respect to these factors, the family court found Wife's attorney, who frequently appeared in family court, charged "a fraction of the amount of the fees charged by [Husband's] attorney." Unfortunately, the record is otherwise silent as to these factors. Moreover, Husband contends merely comparing Wife's bill for attorneys' fees to his bill is insufficient to support the award. We agree. Accordingly, we reverse and remand this issue with specific instructions to allow additional evidence on the issue of the amount of attorneys' fees and to make specific findings of fact as to each of the six *Glasscock* factors.

## III.  Valuation of Marital Property

Husband asserts the family court erred in apportioning the marital property without sufficient evidence in the record to value the marital assets. We disagree.

We find no error in the family court's valuation and apportionment of the marital assets. *See Craig v. Craig*, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005) (stating the division of marital property is within the family court's discretion and will not be disturbed on appeal absent an abuse of discretion); *Roberson v. Roberson*, 359 S.C. 384, 389, 597 S.E.2d 840, 842 (Ct. App. 2004) ("When reviewing the family court's equitable apportionment, 'this Court looks to the fairness of the overall apportionment. If the end result is equitable, it is irrelevant that this Court might have weighed specific factors differently than the [family court].'" (quoting *Johnson*, 296 S.C. at 300, 372 S.E.2d at 113)); *Roe v. Roe*, 311 S.C. 471, 478, 429 S.E.2d 830, 835 (Ct. App. 1993) (holding the family court is given broad discretion in valuing marital property and affirming a finding as to value that was supported by the evidence); *Woodward v. Woodward*, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (affirming the family court's valuation of marital property

where the value "was well within the range" of the evidence); *Smith v. Smith*, 294 S.C. 194, 198-201, 363 S.E.2d 404, 407-08 (Ct. App. 1987) (holding the family court may accept one party's valuations of marital property over those of the other party).

## IV.   Visitation

Husband asserts the family court erred in eliminating his Tuesday overnight visitation with the minor children when testimony established Wife was required to work every Tuesday night.  We disagree.

The family court's decision is in the best interests of the children because it ensures a more stable and consistent schedule of parenting time.  The current visitation plan enables each parent to care for the children for several days at a time.  In crafting this plan, the family court adopted some aspects of the schedule established by a prior agreement of the parties and expanded Husband's time with the children on alternating weekends.  By the time of oral argument in this appeal, the visitation plan had been in effect for well over two years.  As a result, the best interests of the children require that the current visitation plan remain in place.  *See Smith v. Smith*, 386 S.C. 251, 272, 687 S.E.2d 720, 731 (Ct. App. 2009) ("The welfare and best interests of the child are the primary considerations in determining visitation.  The family court has the discretion to place limitations on visitation.  In the absence of a clear abuse of discretion, the family court's order limiting visitation rights will not be disturbed on appeal.").

## CONCLUSION

For the foregoing reasons, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**SHORT and WILLIAMS, JJ., and CURETON, A.J., concur.**